IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHEN TROGDON, individually and on behalf
of and all others similarly situated                                                                PLAINTIFF

v.                                 Case No. 5:14-CV-05057

KLEENCO MAINTENANCE & CONSTRUCTION, INC.                               DEFENDANT

**OPINION AND ORDER**

  Before the Court is Plaintiff Stephen Trogdon's motion to conditionally certify a collective action, approve notice, and toll the statute of limitations (Doc. 25), Defendant Kleenco Maintenance & Construction, Inc.'s ("Kleenco") response (Doc. 27), and the parties' supporting documents. For the following reasons, the Court finds that Trogdon's motion should be GRANTED IN PART and DENIED IN PART.

**I. Background**

  Kleenco is in the business of providing storm water management, landscaping, and other construction services for large retailers throughout the United States. In addition to its home office in Alexandria, Indiana, it operates offices in Centerton, Arkansas, Flagstaff, Arizona, and Harrisburg, Pennsylvania.[1] In June 2013, Kleenco became the subject of a United States Department of Labor investigation involving unpaid overtime compensation dating back to August 31, 2011. In cooperation with the Department of Labor, Kleenco personnel calculated unpaid overtime compensation for each employee in Kleenco's Arizona, Arkansas, Indiana, and Maryland offices. Kleenco personnel then visited each office to meet with employees, explain the amounts

---

[1] Until October 2013, Kleenco also operated an office in Hagerstown, Maryland.

owed to them individually, provide check payments, and obtain signed "Release and Settlement Agreements" from each employee.

Trogdon was an employee of Kleenco from November 20, 2010 through the relevant time of the Department of Labor investigation, and one of ten employees from the Arkansas office—nine of whom have not been located—who did not sign a Release and Settlement Agreement. Trogdon brought suit against Kleenco for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, and Arkansas law based on Kleenco counting travel and work time separately for overtime purposes, and automatically deducting a 30-minute meal break regardless of whether an employee actually took a meal break. Now, pursuant to 29 U.S.C. § 216(b), Trogdon seeks to conditionally certify his FLSA claims as a collective action on behalf of a class consisting of Kleenco's hourly employees who worked at any time during the three years prior to their filing a consent to join this action.

## II. Discussion

### 1. Conditional Certification of Collective Action

"The FLSA allows named plaintiffs to sue [their employer] 'for and in behalf of . . . themselves and other employees similarly situated.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting 29 U.S.C. § 216(b)). This type of suit—a collective action—is distinguishable from a class action pursuant to Federal Rule of Civil Procedure 23, as it requires that plaintiffs use the opt-in mechanism under 29 U.S.C. § 216(b) for joining a putative class of plaintiffs rather than the opt-out procedures in Rule 23. *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). Ultimately, certification of a collective action will depend on whether the named plaintiff is similarly situated to the putative class. Neither § 216(b) nor the Eighth Circuit Court of Appeals has defined when "other employees [are] similarly situated" so

that collective action certification and authorization of notice is appropriate. *Davenport v. Charter Comms., LLC*, 2015 WL 164001, at *4 (E.D. Mo. Jan. 13, 2015). However, most district courts within the Eighth Circuit, including this Court, have utilized a two-stage approach for collective action certification under § 216(b). *See e.g.*, *Croft v. Protomotive, Inc.*, 2013 WL 1976115, at *3 (W.D. Ark. May 13, 2013).[2]

The two-stage approach to certifying a collective action is divided into (1) the notice stage and (2) the opt-in or merits stage. *Id.* at *1. First, when a named plaintiff moves for certification of a collective action—typically early in the discovery process—a court considers whether the putative class should be given court-authorized notice of the opportunity to opt in to the action. *Id.* This requires an initial determination of whether the plaintiff and putative class members are similarly situated, but because this inquiry is made at such an early stage of the litigation, the Court applies a fairly lenient standard. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007). Specifically, the plaintiff bears the burden to make a modest factual showing that he and the putative class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar manner. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940–41 (W.D. Ark. 2007). While the burden of proof is relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quotations omitted). Some factors that may be considered by district courts making

---

[2] While the two-stage approach is widely accepted, the Court finds it appropriate to emphasize that nothing in Eighth Circuit or United States Supreme Court precedent requires district courts to utilize this approach; rather, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Bouaphakeo*, 564 F. Supp. 2d 870, 891 (N.D. Iowa 2008) (citing *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (per curiam)).

3

this determination include: (1) whether everyone worked in the same location; (2) whether they held the same job title; (3) whether the alleged violations occurred during the same time period; (4) whether all workers were subjected to the same policies and practices, and whether those policies and practices were established in the same manner by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Watson v. Surf-Frac Wellhead Equip. Co.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012). If notification is deemed appropriate, the class is conditionally certified for notice purposes and the action proceeds as a representative action throughout discovery. *Croft*, 2013 WL 1976115, at *1 (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940). "Second, when discovery is largely complete, the defendant may move for decertification, and the court will consider other factors to determine whether the conditionally certified class should be permitted to proceed as a collective action." *Id.*

As Trogdon has moved for conditional certification, the Court must now make an initial determination of whether Trogdon and putative class members are similarly situated using the fairly lenient standard applicable to the notice stage of certification. Trogdon requests that the Court conditionally certify and approve notice to "all persons who worked as hourly employees [for Kleenco] at any time during the three year period preceding the filing of the opt-in election for each employee." Considering the relevant standards and applicable factors above, the Court finds that Trogdon has met his burden to demonstrate that he and putative class members are similarly situated to the extent necessary to justify court-authorized notice to the proposed class. Specifically, Trogdon has set forth substantial allegations that he and other hourly employees were victims of policies or plans common to each of them, including: (1) Kleenco counting travel time compensation separately from regular hourly compensation, so as to avoid a cumulative of the two exceeding 40 hours per week; and (2) Kleenco automatically deducting pay for lunch breaks, even

when an employee may not have taken a lunch break.  Each of the acts constituting the alleged violations stemmed from alleged company-wide policies applicable to all hourly employees, making the alleged violations similar and having occurred within relatively the same time period.  In addition, Trogdon has submitted declarations from four other hourly Kleenco employees claiming unpaid overtime for the same reasons.  At this stage, Trogdon's factual allegations along with the sworn declarations in support are sufficient to meet his low burden to show that he and the proposed class of all other hourly employees were subject to common decisions, plans, or policies to deprive them of appropriate compensation.

Kleenco argues that Trogdon has not shown that he is similarly situated to putative plaintiffs because all plaintiffs' claims will require individualized, fact-intensive inquiries into the duties performed by each employee and the scope and types of travel each employee may have done on the job.  As stated above, at this stage of the litigation the determination of whether plaintiffs are similarly situated turns on whether they were all subject to a common policy or practice of failing to pay for time worked or at the requisite overtime rate.  As a threshold matter, class members need not be identically situated to be considered similarly situated.  *Kautsch*, 504 F. Supp. 2d at 690.  Moreover, the "disparate factual and employment settings of the individual plaintiffs" is a consideration reserved for second stage analysis.  *Smith v. Heartland Auto. Servs., Inc.*, 494 F. Supp. 2d 1144, 1150 (D. Minn. 2005); *Kautsch v. Premier Comms.*, 2008 WL 294271, at *2 (W.D. Mo. Jan. 31, 2008); *Bouaphakeo*, 564 F. Supp. 2d at 892.

Kleenco also argues that Trogdon has not met his burden to show that the class should be conditionally certified because he has failed to establish that other similarly situated individuals desire to opt-in to the litigation.  There is no consensus among district courts within the Eighth Circuit as to whether a plaintiff is required to present evidence that similarly situated individuals

5

desire to opt in to the litigation. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *4–5 (E.D. Ark. April 17, 2013) (noting the differences between districts in Eighth Circuits in whether an evidentiary showing was required); *Robinson v. Tyson Foods, Inc.,* 254 F.R.D. 97, 99 (S.D. Iowa 2008) (requiring showing); *Kautsch*, 504 F.Supp.2d at 689–90 (not requiring showing).  This Court has previously expressed its disinclination to require a plaintiff to prove the existence of others who desire to opt-in, *Croft*, 2013 WL 1976115, at *3, and that position remains unchanged.  Still, "[a]ssuming without deciding that the FLSA requires an employee to demonstrate that other employees are interested in the action, the Court is satisfied that some potential class members would wish to opt-in to this litigation if given the opportunity." *Helmert*, 2009 WL 5066759, at *5.

Kleenco has also asserted various defenses that implicate the merits of Trogdon's and putative plaintiffs' claims rather than whether they are similarly situated under the applicable standard at this stage.  Specifically, Kleenco argues (1) that plaintiffs have waived their ability to bring any action against Kleenco for unpaid overtime; (2) that an automatic meal break deduction policy is not illegal; (3) that Kleenco had no automatic meal break deduction policy anyway; and (4) that some plaintiffs would be subject to the "motor carrier exemption" of the FLSA pursuant to 29 U.S.C. § 213(b)(1).  In addition, each party has filed motions for leave to file supplemental briefs setting forth additional arguments based on a recent Eighth Circuit opinion[3] addressing whether certain plaintiffs effectively waived their FLSA claims.[4]  The Court finds that these arguments are premature. *See Beasely v. GC Servs. LP*, 270 F.R.D 442, 445 (E.D. Mo. 2010) (citing *Dernovish v. AT&T Operations, Inc.*, 2010 WL 143692, at *2 (W.D. Mo. Sept. 25, 2012) (explaining that arguments going to the merits of plaintiffs' claims are "not yet ripe for resolution" at the first stage analysis for conditional certification).  Kleenco is correct that the Eighth Circuit has stated that "[a] court may consider . . .

---

[3] *Beauford v. ActionLink, LLC*, 781 F.3d 396 (8th Cir. 2015).
[4] The Court will grant the parties' motions for leave (Docs. 36 and 37), and the supplemental briefs and exhibits attached to the motions are deemed admitted.

the various defenses available to [a] defendant which appear to be individual to each plaintiff" in determining whether a plaintiff and class are similarly situated. *Bouaphakeo*, 765 F.3d at 796. However, the context of that proposition and the authority upon which the Eighth Circuit relies shows—as other district courts within the Eighth Circuit have acknowledged—that these factors are considered during the second stage analysis. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001); *Heartland Auto. Servs., Inc.*, 494 F. Supp. 2d at 1150; *Kautsch*, 2008 WL 294271, at *2; *Bouaphakeo*, 564 F. Supp. 2d at 892. Moreover, while the information Kleenco provides may serve as a valid basis for decertification, the Court does not make findings of fact or credibility determinations with respect to contradictory evidence submitted by the parties at this stage. *Loomis v. CUSA, LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009). Accordingly, the Court finds it appropriate to defer until the second stage analysis any consideration of merits-based arguments and potential defenses applicable to Trogdon or the putative class.

Finally, Kleenco argues that considerations of judicial economy and fairness weigh in favor of not granting conditional certification. The Court disagrees. At this stage, there is a sufficient factual and legal nexus between the claims that "hearing the cases together promotes judicial efficiency." *Jost*, 2009 WL 211943, at *2. However, the Court may revisit considerations of judicial economy and fairness after the parties have engaged in further discovery and when the Court can more appropriately consider the scope and parameters of the litigation as a whole— including the plaintiffs before it. After discovery is complete and the matter is fully briefed, Kleenco's arguments may serve as a valid basis for decertification. However, conditional certification cannot be denied at this point in time simply because Trogdon or additional plaintiffs may not ultimately prevail on their FLSA claims.

For those reasons, the Court finds that Trogdon has met his burden of establishing that he is similarly situated to other hourly employees of Kleenco, as he has made substantial factual allegations that all were victims of common decisions, policies, or plans to deprive them of overtime compensation. Accordingly, the Court will conditionally certify this action for the purpose of giving notice to putative plaintiffs.

### 2. Equitable Tolling of the Statute of Limitations

Trogdon asserts that the statute of limitations should be tolled for the entire class of plaintiffs due to Kleenco's affirmative misconduct in having employees sign broad release and settlement agreements, which ultimately delayed them pursuing their rights.[5] This argument is without merit. The United States Supreme Court set forth various circumstances justifying equitable tolling of a limitations period, such as cases:

> in which a claimant has received inadequate notice . . . ; or where a motion for appointment of counsel is pending . . . ; or where the court has led the plaintiff to believe that she had done everything required of her . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

*Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984) (citations omitted). Considering those cases, "[i]t is clear that equitable tolling is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant." *Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir. 1995). The facts relevant to this issue show that Kleenco made its employees aware of unpaid overtime they had accrued and offered to compensate them accordingly if they signed a Release and Settlement Agreement. Absent, however, is any indication that Kleenco attempted to mislead its employees or otherwise engaged in affirmative misconduct to prevent the filing of

---

[5] Though not specifically stated in his motion, the Court presumes that Trogdon seeks to toll the statute of limitations for putative plaintiffs back to February 11, 2014—the date his complaint was filed.

8

claims. Therefore, the Court declines to equitably toll the statute of limitations to the extent Trogdon seeks. However, the Court notes that the "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in an FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Yahraes v. Rest Assocs. Events Corp.*, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (citations and internal quotations omitted). In that regard, plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should . . . not be penalized due to the courts' heavy dockets and understandable delays in rulings." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). Therefore, the Court finds it appropriate to toll the statute of limitations from October 31, 2014—the date the motion for conditional certification was filed—until the date this order is filed in order to account for the delay.

### 3. Proposed Notice and Consent to Join

Kleenco first argues that the opt-in period should be 45 days rather than 60 days as proposed by Trogdon. Rather than providing any substantive argument as to why a 45 day opt-in period is more appropriate, Kleenco merely cites to instances where a court approved a 45 day opt-in period. This is unavailing and the Court otherwise finds that a 60 day opt-in period strikes the appropriate balance in affording Trogdon adequate time to facilitate notice while preventing unreasonable delay. Therefore, a 60 day opt-in period will be afforded.

Kleenco also objects to multiple portions of the proposed notice and consent to join forms. To remedy the perceived deficiencies, Kleenco requests that the parties be given a period of time in which to complete and submit a mutually agreed-upon version of the forms. In light of the numerous objections, the Court finds it appropriate to allow the parties time to resolve their differences with the documents at issue. Therefore, following entry of this order, the parties will

have until May 29, 2015 to file a joint motion for approval of agreed-upon versions of Notice and Consent to Join forms.

### III. Conclusion

IT IS THEREFORE ORDERED that Trogdon's motion is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED insofar as the Court conditionally certifies the case as a collective action pursuant to 29 U.S.C. § 216(b) and authorizes notice to be sent to putative opt-in plaintiffs. The opt-in class will consist of all current or former hourly employees of Kleenco at any time during the three years prior to their filing of a consent to join form. Kleenco is directed to provide list of the last known names and addresses for putative plaintiffs it has on file in a readily readable electronic format **no later than May 29, 2015**.

IT IS FURTHER ORDERED that the motion is GRANTED insofar as the Court will toll the statute of limitations for opt-in plaintiffs from October 31, 2014 to May 15, 2015.

IT IS FURTHER ORDERED that the motion is DENIED insofar as the Court declines to approve Trogdon's proposed Notice and Consent to Join forms at this time. The parties are directed to confer and file a joint motion for approval of mutually agreed-upon versions of the forms **no later than May 29, 2015.** If and when the Court approves the notice and consent to join forms, the Court will set the start date for the 60 day opt-in period.

IT IS FURTHER ORDERED that the parties are to file a joint proposed scheduling order **no later than May 29, 2015.** The joint proposed scheduling order should include proposed deadlines for a trial date; completion of discovery; disclosure of experts and expert reports; and for dispositive motions.

IT IS SO ORDERED this 15th day of May, 2015.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE